# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY MULDREW, as
Next Friend of D.M., a minor

      Plaintiff,                             Case No. 09-cv-10703

v.                                         HONORABLE STEPHEN J. MURPHY, III

ROBERT HORLOCKER, and
CITY OF WARREN,

      Defendants.
                                  /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (docket no. 18)

Plaintiff Tracy Muldrew has filed this civil rights action on behalf of her minor child, indicated throughout as "D.M.," against Defendant Officer Robert Horlocker and the City of Warren.[1] Muldrew alleges that Officer Horlocker violated D.M.'s constitutional rights by arresting her without probable cause, using excessive force during the arrest, and acting with deliberate indifference to a serious medical condition once D.M. was injured during the arrest. Muldrew also alleges the City of Warren instituted an unconstitutional policy pursuant to which Officer Horlocker acted during the arrest. Horlocker and the City of Warren have moved for summary judgment with respect to all remaining claims. For the reasons stated below, the Court will grant the motion in part and deny it in part. Summary judgment will be granted on all claims except Muldrew's claim against Horlocker for excessive force.

---

[1] Muldrew also included Officer Patrick Moore as a co-defendant in her original complaint, but has since voluntarily dismissed her claims against Officer Moore. *See* docket no. 16.

**FACTUAL BACKGROUND**

In accordance with the summary judgment standards, the following facts are either undisputed or, if disputed, stated in the light most favorable to Muldrew. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Scott v. Harris*, 550 U.S. 372, 378 (2007) (on qualified immunity analysis, court generally must adopt plaintiff's version of the facts).

In the early morning hours of November 18, 2008, through circumstances not relevant here, Defendant Horlocker and his partner, Officer Patrick Moore, answered an emergency dispatcher's request to investigate a possible emergency at 3130 Bernice Street in Warren, Michigan. Someone (later determined to be D.M.) at that residence had dialed 911 emergency, hung up, and later failed to answer the call-back from the emergency operator. Original Incident Report, at 1 (docket no. 18, Ex. 4); Horlocker dep., at 20-21 (docket no. 18, Ex. 5); Moore dep., at 6 (docket no. 18, Ex. 6). When the two officers arrived, they were joined by two additional officers who had earlier that morning responded to the same address for a different reason.

When the officers arrived at 3130 Bernice Street, D.M. was the only person at the residence. They entered the home and asked D.M. whether she had dialed 911 and immediately hung up. Original Incident Report, at 1; Supp. Incident Report, at 2 (docket no. 18, Ex. 1). Although D.M. denies that she hung up on the operator, she admits that multiple 911 hang-ups was the reason provided by the officers for their presence at her home that morning. D.M. dep., at 32 (docket no. 18, Ex. 7). D.M. denied having ever called the operator and hung up. She told the officers that she and the operator had engaged in conversation earlier in the night. *Id.* at 31. In order to "prove [her] point" to the officers that she had conversed with the emergency operator rather than dialing and

2

hanging up, D.M. dialed 911 in the officers' presence to discuss D.M.'s earlier conversations with the operator. *Id.* at 31-32. At that point, after realizing D.M. had dialed 911 again, Horlocker took the phone from D.M., told the operator that everything was okay, and hung up the phone.² Horlocker dep., at 29; Transcription of 911 call, at 5 (docket no. 18, Ex. 3). Horlocker placed D.M. under arrest for misuse of the 911 emergency system. Horlocker dep., at 29. Horlocker testified that he knew that D.M. did not need emergency assistance and was using the system for an improper purpose. *Id.*

Horlocker handcuffed D.M. behind her back and began escorting her out of the residence, holding her right bicep from behind with his left hand. *Id.* at 37, 42. While walking down the hallway, D.M. turned to face Horlocker and began inquiring as to the basis for her arrest. D.M. dep., at 46. D.M. testified that she did not yell, but remained calm, when she asked Officer Horlocker why she was being arrested.³ *Id.* at 48. Horlocker

---

² There is dispute about which officer (Officer Horlocker or Officer Johnson) took the phone from D.M. and spoke with the operator. *Compare* CD Tr., at 5 (docket no. 18, Ex. 3) *with* Horlocker dep., at 29 *and* Johnson dep., at 11-12, 21 (docket no. 18, Ex. 2; docket no. 19, Ex. E). The fact of which officer in fact took the phone from D.M., however, is not material, for there is no dispute that it was Officer Horlocker (and not Johnson) who eventually shoved D.M., which gave rise to this lawsuit. Moreover, Johnson was never added as a co-defendant, further demonstrating the irrelevancy of this particular fact.

³ D.M.'s testimony is in stark contrast to the testimony of the officers. The officers testified that D.M. was yelling and cursing profusely from the time the officers arrived. On summary judgment, however, the Court must credit D.M.'s testimony that she was calm and collected until the time she was injured. It should also be noted that after the hearing, counsel for Horlocker submitted a sur-reply with an attached a DVD capturing the scene from the dashboard of a police cruiser. Counsel states that the video demonstrates that D.M. was *not* calm and was aggressive with the Officers. Def's sur-reply, at 2. The DVD does not support Defendant's position. First, the DVD is 80 minutes long and counsel does not refer the Court to any specific relevant time period thereby requiring the Court to attempt to find the time period on its own. This is not effective advocacy. Second, unless the police cruiser was inside the residence at the time D.M. was injured, the camera's recording would be irrelevant to the excessive force claim because only the conduct of Horlocker and D.M. *inside* the home when D.M. was being led through the hallway is relevant. D.M. *admits* that she began cursing at the officers after she was injured, but this admission is not relevant to the excessive force claim. Third, counsel claims that the video

3

told D.M. to stop resisting arrest and to keep walking towards the front door. D.M. stumbled and fell into the door of the hallway closet. *Id.* at 46, 51. D.M. asserts that she was not resisting arrest. *Id.* at 49. She testified that she continued to turn around to discuss with Horlocker the basis of her arrest. *Id.* at 52. She states that she was simply asking questions because she was confused as to how the officers had entered her home without having been given permission and later arrested her. *Id.* at 48. It seemed to D.M. that Officer Horlocker felt he did not have to explain why she was being arrested, and refused to answer her questions. *Id.* at 48.

After regaining her balance from falling into the closet door, D.M. took approximately three steps towards the door. *Id.* at 51, 53. D.M. again turned to face Horlocker – while still walking towards the door – and again asked him about the basis for her arrest. *Id.* at 55. At this point, according to Horlocker, D.M. "bumped [Horlocker] in the chest with her left shoulder." Horlocker dep., at 42. "To defend [him]self and to keep [his] weapons protected, [he] pushed her away from [himself] to create space." *Id.* D.M.'s account of the incident contains no discussion of this instance of contact with Horlocker. D.M. dep. at 53-55. The Court, therefore, must assume on summary judgment that D.M. never bumped up against Horlocker before being pushed for the second time. According to D.M., Horlocker placed the open palms of both of his hands on D.M.'s chest, between her breast area and neck, and applied enough force to push her backwards. *Id.* at 55. D.M. fell sideways into a glass window running along the left side of the front door. The right side of D.M.'s body

---

includes Horlocker's statement of D.M.'s "attack" which caused him to push her away. *Id.* The Court did not observe an audio track on the DVD, but even if there was audio, Horlocker's alleged statement is hearsay and Horlocker offers no foundation for an exception to Fed. R. Evid. 802.

4

went through the glass window. *Id.* at 56. D.M. said one of the officers, after having watched D.M. fall, exclaimed, "Oh, F." *Id.* at 57.

D.M. testified that she was standing on the tile flooring before the front door when she turned to face Horlocker the second time. *Id.* at 54. Although D.M. did not recall the length of this tile area from the end of the carpet to the front door, she concedes that "it couldn't have been that wide for [her] to go through the window," *id.*, thus partly attributing the cause of her fall through the window to her proximity to the window when pushed.

According to D.M., the officers told her to get up and walk out the front door by herself. *Id.* at 58. Once D.M. saw she had blood dripping from her left arm, she began to curse at everyone, "saying everything in the book." *Id.* at 58, 64 She admits that the officers gave her a towel to wrap around her bleeding arm. She refused their assistance, however, because she was angry that they had just pushed her through a window and because she was unwilling to use one of her mother's "good towels" to stop the bleeding. *Id.* at 58, 65. D.M. also testified that she did not accept the towel because she thought it would "burn" if she wrapped her arm, and because she did not know the depth or severity of the cut. *Id.* at 65. She told the officers she would rather wait for the ambulance than accept their assistance. *Id.*

The officers asked D.M. for Muldrew's telephone number so they could notify Muldrew of the incident. *Id.* at 59. Officer Horlocker called dispatch to have the fire department and Universal Ambulance respond to the scene. Horlocker dep., at 51; D.M. dep., at 61. Officer Moore called Muldrew three times after the accident to tell her what happened. Muldrew dep., at 15 (docket no. 18, Ex. 11). He told her that D.M. would need stitches and that Muldrew would need to provide pre-treatment parental authorization for the medical treatment at the hospital. *Id.* at 17. The officers went to the hospital with D.M.

5

and waited for Muldrew to arrive, at which time D.M. was released to Muldrew's custody. Original Incident Report, at 2.

A petition was subsequently authorized by an Assistant Prosecuting Attorney for Macomb County and a Referee in the 16th Judicial Circuit Court – Juvenile Division, for 1) misuse of the 911 Emergency Service, Mich. Comp. Laws § 484.1605(2); and 2) Assaulting/Resisting/Obstructing a Police Officer, Mich. Comp. Laws § 750.81d(1). Petition (docket no. 18, Ex. 12).  D.M. pleaded no contest to both misuse of the 911 emergency service and an added count of Attempted Resisting and Obstructing.  She was sentenced to probation.  Order for Advisement (docket no. 18, Ex. 12).

## DISCUSSION

I.  <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

The moving party has the burden of demonstrating that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992). A fact is "material" if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

In opposing a motion for summary judgment, the nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

II. Analysis

The only remaining claim is Muldrew's Fourth Amendment (excessive force) claim. Muldrew expressly does not oppose the City of Warren's motion for summary judgment on her *Monell* claim or Horlocker's motion for summary judgment on her unlawful arrest claim. Pl. Resp. Br., at 6. Additionally, Muldrew has not responded to Horlocker's motion for summary judgment on her Due Process (deliberate indifference) claim. By failing to address this claim in her brief, and by failing to refute the facts alleged in Defendants' brief as they relate to the deliberate indifference claim, Muldrew has implicitly consented to summary judgment on the claim. *Cf. Anderson*, 477 U.S. at 248 (party opposing summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."); Fed. R. Civ. P. 56(e).

7

Moreover, having considered the undisputed facts relating to the deliberate indifference claim, it is clear that the officers were not deliberately indifferent to the serious medical needs of D.M. because they attempted to assist her after the injury. Accordingly, the Court needs only to address the excessive force claim.

Horlocker requests summary judgment on the grounds of qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from civil damages liability as long as their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (quotation omitted). To find that an officer is entitled to qualified immunity, a court must conclude that: 1) the facts, when taken in the light most favorable to the plaintiff, shows that the officer's conduct violated a constitutional right; and 2) that right was clearly established in the light of the specific context of the case. *See Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). While the above sequence is often appropriate, it is not mandatory, and a court may consider either of the two inquiries first. *Id.* at 647 (citing *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)). Once immunity is asserted, the plaintiff has the burden of demonstrating the officer is not entitled to it. *Id.*

A. Excessive Force Standards

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is applicable against the states. *See Wolf v. Colorado*, 338 U.S. 25, 28 (1949), *overruled on other grounds* by *Mapp v. Ohio*, 367 U.S. 643 (1961). It is well-established that one of the rights protected by the Fourth Amendment is the right to be free from excessive force during an arrest. *See, e.g., Graham v. Connor*, 490 U.S. 386 (1989); *Livermore,* 476 F.3d at 404.

8

In *Graham v. Connor*, the Supreme Court made clear that where a claim of excessive force arises in the context of an arrest of an otherwise free citizen, "it is most properly characterized as one invoking the protections of the Fourth Amendment," as opposed to a generic substantive due process claim. 490 U.S. at 393-94. In establishing the framework for analyzing excessive force claims, the Court stated that "*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ...." *Id.* at 395 (emphasis in original).

It has long been recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical force to effect the arrest. *Graham*, 490 U.S. at 396. Such accompanying force must be "reasonable" to comply with the Fourth Amendment. Whether the use of force is excessive or unreasonable depends on a consideration of all the facts and circumstances of each particular case, and courts must balance the consequences to the individual against the government's interests in effecting the seizure. *Id.* Courts should consider specifically the severity of the offense of arrest, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or attempting to evade arrest. *Id.*

Whether the use of force in an arrest is "reasonable" is judged from the perspective of a reasonable observer on the scene, rather than from the 20/20 vision of hindsight. *Id.* Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation omitted). The determination must "embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-

9

97. This standard contains a "built-in measure of deference to the officer's on the spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

The determination of reasonableness is not a question of fact best reserved for a jury. *See Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (discussing *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007)). As the Supreme Court recently stated, "[a]t the summary judgment stage ... once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record ... the reasonableness of the [the defendant's] actions ... is a pure question of law." *Scott*, 550 U.S. at 381 n. 8 (internal citations and emphasis omitted).

B. <u>Application</u>

There is only one instance of alleged excessive force with respect to D.M. The complaint alleges that the defendant officers "violently shoved D.M. toward the front door of her home with her hands cuffed behind her back causing her to loose [sic] her balance and fall against a window breaking the window and severely lacerating her arm causing horrendous injury and damages." Compl. ¶ 10.[4] To the extent there is arguably a separate

---

[4] The complaint also alleges that the officers "forcefully handcuffed [D.M.] and with great force began to drag her from her home." Compl. ¶ 9. There is no evidence in the record, however, of D.M. being "forcefully handcuffed" and "dragged" from her home, except to the extent that D.M. claims she was pushed while being escorted out of her home. Moreover, D.M.'s response brief includes no discussion of any alleged "forceful handcuffing." Since there has been no development of a claim of forceful handcuffing in violation of the Fourth Amendment, *see, e.g., Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) ("The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure."), to the extent D.M. has alleged a separate claim, she cannot establish a prima facie case, and Horlocker is entitled to summary judgment on the claim. *See id.* ("In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing.").

claim for the push into the closet preceding the push towards the front door, Muldrew does not assert that the shove should be analyzed separately, and the Court concludes that the claim is properly analyzed as part of the overall attempt to escort D.M. out of the home.

Considering the totality of the circumstances as viewed from the perspective of a reasonable officer on the scene, the Court concludes that a jury could find that Horlocker used excessive force in arresting D.M. All three factors considered in determining whether a specific use of force is excessive weigh in favor of a valid claim for excessive force. *See Graham*, 490 U.S. at 396. First, the offense of arrest in this case – misuse of the emergency 911 service – is not a terribly serious offense which would potentially require physical force to ensure the safety of the officers. The Court views the offense as less serious than the offense of disorderly conduct, which the Sixth Circuit and district courts within the Circuit have routinely found -- albeit in unpublished opinions -- to be "not a violent or serious crime," and that this fact weighs in favor of using less force in arresting someone for such conduct. *See, e.g., Carpenter v. Bowling*, 276 Fed. Appx. 423, 426 (6th Cir. 2008); *Thacker v. Lawrence County*, 182 Fed. Appx. 464, 472 (6th Cir. 2006); *Tedford v. Szokola*, No. 06-15392, 2008 WL 3066824, at *11 (E.D. Mich. July 30, 2008); *see also Kies v. City of Lima*, 612 F. Supp. 2d 888, 898 (N.D. Ohio 2009). Second, crediting D.M's deposition testimony, a jury could find that D.M. did not pose any threat to the safety of the officers or others. Her hands were bound behind her back, there were no weapons nearby that she could have reached, and there were other officers in the home who would have been able to assist had she started to pose any threats. Finally, assuming the truth of D.M.'s testimony, a jury could find D.M. was not resisting arrest. Despite being told by Horlocker that she was resisting arrest, D.M. denies she was resisting. Turning to face an arresting officer to inquire as to the basis for an arrest is not *per se* resisting in the view of the Court.

Horlocker argues that this case is similar enough to *Abdul-Khaliq, v. City of Newark*, 275 Fed. Appx. 517 (6th Cir. 2008) (unpublished) to require the same result. The Court disagrees. Besides the fact that unpublished opinions – even those of the Sixth Circuit – have little precedential value, *see, e.g., McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000), the facts in that case sufficiently distinguish it from this case. In *Abdul-Khaliq*, police officers arrested the plaintiff for disorderly conduct. *Id.* at 518. The plaintiff admitted to "angry yelling and cursing at the officers, carrying on a prolonged and heated debate about whether or not he had a gun, and vigorously opening his coat in a gesture toward the police officers." *Id.* at 521. With little analysis, the panel affirmed the district court's grant of summary judgment on the plaintiff's claim that the officers used excessive force when they used pepper spray, knocked him to the ground, and later handcuffed him. *Id.* The panel found that the use of force was objectively reasonable given the circumstances the officers faced. *Id.*

In this case, unlike in *Abdul-Khaliq*, the evidence viewed in the light most favorable to D.M. shows that D.M. was clam and collected during her arrest, and did not raise her voice until *after* she was injured. Also, there is no evidence that the officers believed that D.M. was in possession of a weapon when they arrested her, unlike the plaintiff in *Adbul-Khaliq*. Finally, crediting the testimony of D.M., there is no evidence D.M. made any threatening gestures toward Horlocker while being arrested. D.M. was already in handcuffs before Horlocker used the allegedly excessive force by pushing her. In *Adbul-Khaliq*, however, the plaintiff had not yet been restrained when he was began "gesturing" toward the officers, requiring the use of pepper spray to subdue him.

The Court concludes that a jury could find, based on D.M. testimony, that Horlocker used excessive force in arresting D.M. when he shoved her backwards into a window after

12

she had been handcuffed behind her back. Having so concluded, the Court must now consider whether D.M. had a clearly established right to be free from such conduct such that Horlocker's claim of qualified immunity should be denied.

The Supreme Court has emphasized that the qualified immunity analysis "must be undertaken in light of the specific context of the case, [and] not as a broad general proposition." *Livermore*, 476 F.3d at 403 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As the Court recently stated,

> [T]here is no doubt that [*Graham*] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [v. *Creighton*] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640 [, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam) (quoting *Saucier*, 533 U.S. at 201-02).

Following the lead of the Fourth Amendment's reasonableness standard, the standard set forth in *Graham* is "cast at a high level of generality" that is many times insufficient by itself to put a reasonable officer on notice that what he is doing violates clearly established rights. *See Brosseau*, 543 U.S. at 199. But, in an "obvious case" of excessive force, *Graham* itself can be sufficient to put a reasonable officer on notice that his conduct is unconstitutional, even in the absence of a materially similar case. *Id.* The Court considers this case to be an "obvious" one in which a reasonable officer would be on notice under *Graham* itself that his conduct, as alleged by D.M., violated D.M.'s clearly established rights. Specifically, the Court finds that reasonable officers are on notice that

13

pushing a young suspect who is handcuffed behind her back and not resisting arrest, and who poses no threat to herself, the officer, or the public, with enough force that the suspect falls backward three to five feet and crashes through a plate glass window, violates the suspect's clearly established constitutional right to be free from excessive force. "Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (internal quotation and citation omitted). The facts here, however, do not present one of those "hazy cases" in which the defense will operate to save the officer from civil liability. *See, e.g., id.* at 175. Accordingly, the Court will deny Horlocker's request for qualified immunity on Muldrew's excessive force claim.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgement (docket no. 18) is **GRANTED** in part, and **DENIED** in part, in that the motion is granted as to all of Plaintiff's claims except her claim against Officer Horlocker for excessive force. As to the Fourth Amendment claim, Horlocker's motion is denied.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 14, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 14, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager