UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RALPH ELDRIDGE

        Plaintiff,

v.

CITY OF WARREN, PATRICK MOORE and
ROBERT HORLOCKER

Case No. 10-12893
Honorable Julian Abele Cook, Jr.

        Defendants.


ORDER

Plaintiff Ralph Eldridge has filed this civil rights action against Defendants Patrick Moore, Robert Horlocker, and the City of Warren. Eldridge alleges that the Officers violated his constitutional rights by using excessive force during the arrest, and acting with deliberate indifference to a serious medical condition. Defendants Moore and Horlocker have moved for summary judgment with respect to the claims against them. (ECF 34).

I.

Ralph Eldridge, a fifty-three year old insulin dependent diabetic male, contends that he suffered an unexpected episode of hypoglycemia[1] while driving to his job in Warren, Michigan in the early morning hours of June 18, 2009. (ECF 39 at 6). Although Plaintiff does not recall how it occurred, he apparently drove over a curb onto a lawn, before stopping his vehicle near a

---

[1] Hypoglycemia is associated with diabetes. The condition occurs when a person has abnormally low blood sugar. When hypoglycemia occurs, the patient may suffer a variety of symptoms including confusion, abnormal behavior, and visual disturbances.

construction site at an apartment complex. (ECF 34, Exhibit E, Eldridge Dep, at 8).

Soon after, the Defendant officers arrived on the scene. A video on the police car provides an audio-visual account of the following encounter. (ECF 34, Exhibit B). The court will rely in large measure on this recording to determine the appearance and order of events that morning, as far as they can be indisputably determined, and will cite to the time-stamped information that appears in the lower portion of the recording. When the Officers approach the vehicle, Plaintiff is seated behind the steering wheel with the engine still running. (7:23:00-08). Officer Moore approached the driver side of the vehicle while Officer Horlocker approached the passenger side. (7:23:08-15). The Officers fail to identify themselves. (7:23:15-20) The Officers ask Plaintiff "what is going on?" and "what are you doing?" Plaintiff repeatedly responds "I'm fine" while remaining seated in the truck; Officer Moore repeatedly requests that Plaintiff turn off the engine. Plaintiff continues to repeat "I'm fine" and makes other unintelligible and inaudible remarks. (7:23:20-28) Officer Moore then reaches into Plaintiff's vehicle and turns off the ignition. (7:23:30). Office Moore asks Eldridge what he is doing and orders him to step out of the car. (7:23:40-55). Officer Moore states to Officer Horlocker that the keys are out of the car, and that "it won't go anywhere." (7:24:14-16). The Officers both repeatedly request Plaintiff to get out of the car. Officer Moore threatens to use a taser if Eldridge does not comply. (7:24:33). Officer Moore asks Eldridge if he "wants to get tasered?" (7:24:55). This continues for several minutes. Officer Horlocker walks around to the driver side of the door, and along with Officer Moore, they attempt to pull Eldridge out of the vehicle. (7:25:00). Both Officers continue to threaten to use a taser if Eldridge does not step out of the truck. (7:25:12). During this time, Eldridge remains seated in the driver's seat of the vehicle. His responses to the officers are unintelligible and inaudible, although he does not appear to be verbally threatening the

Officers.

What happens next is unclear from the video. Plaintiff's response brief and complaint submit that Eldridge was tasered while he was still in the car. Defendant Officers' motion for summary judgment submits that Eldridge was tasered after he was pulled from the car, and while he was flailing around and resisting the Officers' attempts to gain control over him. (ECF 34, at ¶¶ 26-30.) Officer Moore testified that he tasered Eldridge as he had "just gotten out of his car, I believe, or was just removed from his car. . . I believe he was in the doorway there." (ECF 34, Ex C). From the video, it appears that Eldridge is tasered as he is pulled forcibly from the car, although it is not clear. (7:25:24).

The Officers repeatedly order Eldridge to get on the ground while they attempt to restrain him, to which Eldridge repeatedly responds "I'm trying." One of the Officers orders Eldridge to "get on the fucking ground." (7:25:24-48). Once Eldridge is on the ground, Officer Moore bounces his knee against the Plaintiff's neck, while Eldridge is lying on the pavement, face down. (7:25:48-55). Eldridge is handcuffed. (7:26:08). During this time, Eldridge is moaning in what appears to be pain and confusion.

While Eldridge is on the ground and handcuffed, Officer Horlocker notices a medical device on Eldridge's wrist and asks "what the fuck is that?" Officer Moore responds "who knows." (7:26:40-45). Officer Moore throws something into the vehicle. (7:26:49). The Officers continue to speak, but it is not clear from the recording what they are saying. (7:26:50-27:04). Officer Moore helps Eldridge roll over onto his back and he yells with pain. (7:27:04-12). The Officers help Eldridge stand up, at which point they search his body and find Eldridge's insulin pump around his waist. (7:27:12-29). Officer Horlocker then asks Eldridge if he has a medical condition, to which

Eldridge responds yes. (7:27:29-37). The Officers then shout at Eldridge and ask him why he didn't tell them that. Officer Moore asks Eldridge if he has been drinking. The Officers ask Eldridge why he didn't tell them he had a medical condition. Eldridge appears confused and doesn't clearly respond. The Officers instruct Eldridge to sit on the front of the police cruiser. (7:27-37-7:28:17). Eldridge remains handcuffed and complains that they are too tight. (7:28:37). The Officers loosen the handcuffs while Eldridge continues to moan and heave in pain. (7:28:45). The officers radio for medical assistance. (7:28:55). At 7:30:40, the audio to the recording is turned off. A 7:35:00, the audio is turned back on. Eldridge's handcuffs are removed. (7:35:20).The Fire Department arrives shortly thereafter. (7:36:30). The EMS technicians arrive, and after testing Eldridge's blood sugar level, they administer glucose. Eldridge's blood sugar level is diagnosed as being at 54. (7:36:30-7:40:00).

## II.

In an effort to assess the merit, if any, of the Defendants' dispositive motion, the Court now turns to Rule 56(a) of the Federal Rules of Civil Procedure which provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the mom-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In a motion for summary judgment, the central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Jones v. Potter*, 488 F.3d 387, 403 (6th Cir.2007) (internal citation omitted). Summary judgment should be granted "only where the

moving party is entitled to judgment as a matter o flaw, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467 (1962) (internal quotation and citation omitted).

In a motion for summary judgment, the moving party bears the initial burden of showing that (1) no genuine issue as to any material fact exists and (2) it is entitled to a judgment as a matter of law. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003). If the moving party meets it burden, and adequate time for discovery has been provided, summary judgement is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must do more than raise some doubt as to the existence of fact; he must produce evidence that would be sufficient to require submission of the issue to a jury. Fed. R Civ. P. 56(e).

III.

Plaintiff filed the instant action seeking to impose liability on Officers Patrick Moore and Robert Horlocker for injuries sustained by the Plaintiff on June 18, 2009. Plaintiff submits that the Defendant Officers used excessive force and were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Plaintiffs Fourth and Eighth Amendment rights, actionable under 42 U.S.C. § 1983. The Defendant Officers submit that they are entitled to summary judgement on the grounds of qualified immunity.

Eldridge has not responded to Defendants' motion for summary judgement on his Eighth Amendment claim. By failing to address this claim in his response brief, and by failing to refute the

facts alleged in Defendants' brief as they relate to the Eighth Amendment claim, Eldridge has implicitly consented to summary judgment on the claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (party opposing summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.") Fed. R. Civ. P. 56(e). Plaintiff offers no response in opposition to the defendant officers' motion regarding the alleged denial of medical needs. Moreover, having considered the undisputed facts relating to the deliberate indifference claim, it is clear that the officers were not deliberately indifferent to the serious medical needs of the Plaintiff. Once the Officers became aware of his condition, they radioed for medical assistance. Therefore, the Court need only address the claim of excessive force in violation of the Fourth Amendment.

Officers Moore and Horlocker request summary judgment on the grounds of qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from civil damages liability as long as their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir.2007) (internal citations omitted). A defendant is entitled to qualified immunity unless the evidence, viewed in the light most favorable to the plaintiff, "would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir.2010) (internal quotation omitted). The burden is on the plaintiff to demonstrate that the officer is not entitled to qualified immunity. *See Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir.2010).

## IV.

Plaintiff's complaint alleges that the defendant officers violated his rights under the Fourth

and Fourteenth Amendments when they utilized excessive force to remove Plaintiff from his vehicle and restrain him. The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is applicable against the states. *See Wolf v. Colorado*, 338 U.S. 25, 28 (1949) *overruled on other grounds* by *Mapp v. Ohio*, 367 U.S. 643 (1961). It is well-established that one of the rights protected by the Fourth Amendment is the right to be free from excessive force in the course of an arrest. *See, e.g., Graham v. Connor*, 490 U.S. 386 (1989); *Livermore*, 476 F.3d at 404.

In *Graham v. Connor*, the Supreme Court made clear that where a claim of excessive force arises in the context of an arrest of an otherwise free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, rather than as a generic substantive due process claim. *Graham*, 490 U.S. 393-94. The right to make an arrest necessarily carries with it the right to use a certain degree of physical force to effect the arrest. *Id* at 396. However, such accompanying force must be "reasonable" to comply with the Fourth Amendment. In determining whether the use of force is excessive or unreasonable depends upon a consideration of all the facts and circumstances in each particular case. *Id*. The court must balance the consequences to the individual against the government's interests in effecting the seizure. *Id.* As articulated by the Sixth Circuit:

> Claims of excessive force are analyzed under the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight. An officer making an investigative stop or arrest has the right to use some degree of physical coercion or threat thereof to effect it. Relevant considerations include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable. *Fox v. DeSoto* 489 F.3d 227, 236-7 (6th Cir.2007) (internal citations and quotations

7

omitted).

Addressing the use of video evidence at the summary judgment stage, the Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The liability of each officer must be assessed individually, based on his own actions. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.2010).

1. Patrick Moore

Considering the totality of the circumstances as viewed from the perspective of a reasonable officer on the scene, the Court concludes that a jury could find that Officer Moore used excessive force in arresting Eldridge. First, with regard to the severity of the offense, upon arriving at the scene Officer Moore suspected that Eldridge may be been driving drunk based on a call reporting Eldridge's erratic driving. (ECF 34, Ex. C, at 46). Clearly, driving while under the influence of intoxicants is a serious offence. Yet, Officer Moore's subsequent interactions with Eldridge demonstrate that Eldridge did not pose a threat to the safety of the officers or anyone else. Viewing the video in the light most favorable to the Plaintiff, the Court finds that the keys may have been removed, thereby removing a significant risk of harm to the Officers and other bystanders. In particular, it appears from the video that Officer Moore removed the keys from the vehicle shortly after approaching Eldridge's vehicle. (7:24:14-16). However, there is an issue of material fact as to whether the key was removed. In Officer Moore's deposition, he states that while he remembers reaching into the vehicle to turn off the vehicle, he does not remember when the vehicle was turned off or who turned it off. (ECF 34, Ex. C, at 33-4).

Despite the ambiguity of this fact, it is clear from the video that while Eldridge does not

comply with Officer Moore's repeated commands, he does not actively resist or threaten the Officers. Rather, Eldridge appears to be in a state of confusion and limited consciousness. Thus, a jury could reasonably find that (1) Eldridge did not pose any threat to the safety of the officers or others, and (2) that Eldridge was not resisting arrest. Viewing the evidence in the light most favorable to the Plaintiff, it appears as though Eldridge was barely conscious prior to being tasered. When he is tasered, he does not appear to be in control of his reactions, rather he is flailing and yelling with pain. When he is able to respond, he states "I'm trying" in response to the Officers' commands. Further, while Eldridge is lying face down on the pavement and being handcuffed by Officer Horlocker, Officer Moore kneels on Eldridge's back and bounces his leg and knee against Eldridge's neck. It could appear to a reasonable jury that Eldridge, to the extent he was capable, was attempting to comply with the Officers' orders when this force was used. Officer Moore's use of force in removing Eldridge from the vehicle, including the use of the taser, and his use of force to get Eldridge handcuffed may not have been reasonable.

However, the Court finds that Officer Moore is entitled to summary judgment on the claim that the use of handcuffs constituted excessive force. As soon as Eldridge complained, the handcuffs were removed. *See Morrison v. Bd. of Tres. Of Green Twp.,* 583 F.3d 394, 401 (6th Cir.2009) (holding that for a handcuffing claim to survive summary judgment, the plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing.)

2. Robert Horlocker

While the video demonstrates that Patrick Moore deployed the taser and used his knee to hit

9

Eldridge's neck while he was being handcuffed, the Plaintiff also accuses Officer Horlocker of using excessive force. Generally, mere presence at the scene, without a showing of direct responsibility for the action, will not subject an officer to liability. *Binay* 601 F.3d at 650. "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the excessive force." *Id.* (internal citation and quotations omitted). From the video, it appears that Officer Horlocker actively participated in Officer Moore's use of excessive force. Officer Horlocker threatens Eldridge with use of the taser, and forcefully handcuffs Eldridge while he is lying face down on the ground.

Having concluded that a jury could find that the Officers used excessive force in arresting Eldridge, the Court must now consider the second prong of immunity. The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right to clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir.2002). The Sixth Circuit has repeatedly held that "the right to be free from excessive force is a clearly established right." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir.1993) (internal quotation omitted); *see also Landis v. Baker,* 297 Fed. Appx. 453 (6th Cir.2008); *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir.2006). Officer Moore's use of the taser and subsequent use of physical force while Officer Horlocker handcuffed Eldridge could be found to be objectively unreasonable by a jury. Specifically, the Court finds that reasonable officers are on notice that using a taser and significant physical force on a citizen who is suffering a medical condition and not resisting arrest, and who poses no threat to the officer or public, violates the

suspect's clearly established constitutional right to be free from excessive force. "Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Solomon v. Auburn Hills Police Dep't.,* 389 F.3d 167, 174 (6th Cir.2004) (internal quotation and citation omitted). However, the facts here do not present a "hazy case." Accordingly, the Court will deny the Officers' request for qualified immunity on Eldridge's excessive force claim, save for the allegations regarding to the use of handcuffs.

IV.

For the reasons that have been stated above, the Defendants' motion for summary judgment (ECF 34) is granted in part and denied in part. The motion is granted with respect to Plaintiff's Eighth Amendment claim and Fourth Amendment claim regarding the tightness of the handcuffs. The motion is denied with respect to the balance of Plaintiff's claims.

IT IS SO ORDERED.

Date: March 28, 2012                          s/Julian Abele Cook, Jr.
                                              JULIAN ABELE COOK, JR.
                                              U.S. District Court Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 28, 2012.

                                              s/ Kay Doaks
                                              Case Manager